**FIRST DIVISION
BARNES, P. J.,
MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 27, 2026**

# In the Court of Appeals of Georgia

A26A0427. PEOPLES v. THE STATE.

HODGES, Judge.

On the second day of his jury trial, and before its completion, Kelvin Peoples elected to enter a negotiated plea of guilty to the first degree burglary, aggravated assault, and false imprisonment of S. G., with whom he had been in a romantic relationship. Twenty days after entering his plea, Peoples filed a motion seeking to withdraw that plea. Following a hearing, the trial court denied his motion. Peoples appealed,[1] arguing that the trial court erred by failing to "ensur[e] an adequate record

---

[1] Peoples filed a direct appeal from the denial of his motion to withdraw his guilty plea. Even when not raised by the parties, "[i]t is incumbent upon this Court ... to inquire into its own jurisdiction." *Dias v. Boone*, 320 Ga. 785, 789(2) (912 SE2d 547) (2025). In 2025, our General Assembly changed the way in which a defendant may obtain review of a guilty plea. "Effective May 14, 2025, the legislature amended OCGA § 5-6-35(a), adding a new subsection (5.3), which requires '[d]irect appeals

was made of the factual basis of the guilty plea." He also briefly asserted that the plea

"was unsupported by a sufficient finding of voluntariness[.]" We find no error.

> After sentencing, the decision on a motion to withdraw a guilty plea is within the trial court's discretion, and withdrawal of the plea is allowed only when necessary to correct a manifest injustice. The test for manifest injustice will by necessity vary from case to case, but it has been said that withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges.

*Powell v. State*, 309 Ga. 523, 524(1) (847 SE2d 338) (2020) (citation omitted). "We review the trial court's denial of Appellant's motion to withdraw guilty plea for abuse of discretion." *McCallum v. State*, 369 Ga. App. 683, 687(1) (894 SE2d 426) (2023).

---

from guilty pleas' to be initiated by filing an application for discretionary review." *Clark v. State*, ___ Ga. App. ___, ___ n. 1 (924 SE2d 346) (2025), A25A2036, slip op. at 1, n. 1 (Ga. App. Dec. 5, 2025) (2025 Ga. App. LEXIS 564). Here, Peoples does not appeal from the entry of his guilty plea; rather, he appeals from the denial of his motion to withdraw that plea. Therefore, we have jurisdiction. Compare *Hester v. State*, ___ Ga. App. ___ (2025), A26A0903, slip op. at 1 (Ga. App. Dec. 11, 2025) (2025 Ga. App. LEXIS 568)(dismissing direct appeal from entry of guilty plea for lack of jurisdiction because discretionary application process was required under OCGA § 5-6-35(a)(5.3)).

(a) *Factual basis*. Uniform Superior Court Rule ("USCR") 33.9 mandates that a judgment of conviction should not be entered upon a plea of guilty without an inquiry on the record to "satisfy the judge that there is a factual basis for the plea." Our Supreme Court has determined, however, that USCR 33.9 "requires nothing more than that the trial court make itself aware of the factual basis of the plea." *Phelps v. State*, 293 Ga. 873, 874(1) (750 SE2d 340) (2013) (citation and punctuation omitted). The Supreme Court also found that, although the language of USCR 33.9 "could be read as requiring a trial court to make a specific question by question inquiry on the record as to the factual basis, *we decline to so interpret it*." *State v. Evans*, 265 Ga. 332, 334(2) (454 SE2d 468) (1995) (emphasis added). According to the Supreme Court:

> The purpose of USCR 33.9 is to protect against someone pleading guilty when that person may know what he has done but may not know that those acts do not constitute the crime with which he is charged. USCR 33.9 provides this protection by requiring a trial court to subjectively satisfy itself that there is a factual basis for the plea. This purpose is satisfied by permitting a trial court to discern the factual basis in a wide variety of ways, and we see no reason to restrict a trial court to any one method of subjectively satisfying itself of a factual basis.

Id. (citation omitted).

Here, the trial court discerned the factual basis from the evidence presented at the abbreviated trial. At the plea hearing, both parties' counsel stipulated that they would rely for the factual basis on the evidence from the case-in-chief that the court had already heard at trial. The trial court agreed. Perhaps because of this, the trial court did not make an on-the-record inquiry into those facts at the plea hearing. Our Supreme Court has determined, however, that an on-the-record inquiry is not necessarily required, finding that the law

> would also permit a trial court to learn the factual basis from material contained in parts of the record other than the guilty plea hearing so long as the trial court makes clear on the plea hearing record that he is relying on those parts of the record and so long as those parts of the record are made a part of the record for appeal.

*Evans*, 265 Ga. at 335(2). The *Evans* Court found that, even where a plea hearing record did not adequately demonstrate a factual basis, no manifest injustice existed because the affidavit of an investigator — which had not been introduced at the plea hearing — established a factual basis for the plea. Id. at 334(2), 335-36(3). Our Court has likewise found no manifest injustice where, "where, despite a violation of USCR

4

33.9, there is evidence in the record establishing a factual basis for the crime in question." *Bielen v. State*, 265 Ga. App. 865, 867(1) (595 SE2d 543) (2004).

In the instant case, following the trial court's agreement to using the trial record to establish a factual basis, the court stated that "[b]ased on the "factual outline given," it was finding Peoples guilty of the crimes to which he had pled. The trial transcript on which the court relied is part of the record on appeal. *Evans*, 265 Ga. at 335(2).

That trial transcript shows that S. G. did not give Peoples a key to her home or free access to the house. Nonetheless, after S. G. and Peoples broke up, and while she was at home taking a shower, "all of a sudden the curtain just snatches open, and it's Kelvin [Peoples] standing there." Before S. G. could react, Peoples hit S. G. in the face, causing her to slip and fall in the tub. He then grabbed her by the hair, pulled her out of the tub, and dragged her by the hair to her bedroom. In doing so, he hit her face so hard on the door that the impact broke the door and pulled out her nose ring. In the bedroom, Peoples punched her in the face "over and over and over again" and put his foot down on her face. He then forced her into the living room and kicked her in the stomach until she threw up. He also hit her in the head with a phone and tried to

choke her by pressing his arm and hand across her throat and chest, cutting off her airflow until she went limp. His abuse left her face, head, and mouth bruised and bloodied, and left bruises and scratches on her body. When she tried to get up to escape, he would not let her. He refused to let her exit her house, physically restraining her so she could not leave.

When Peoples went to the bathroom, S. G. grabbed her car keys and escaped in her vehicle. She drove around for awhile, saw Peoples leaving her neighborhood on foot, and went back to her house to call the police. Peoples returned to the house and kicked in the back door to gain entry. When a police officer arrived, he found Peoples with S. G. at her home. He also found a footprint matching the pattern of the sole of Peoples' shoe on the broken door, indicating "a considerable amount of force" was used to break down the door. The officer testified that abrasions on Peoples' hand and finger were consistent with his having struck someone in the face and skinned his knuckles on the person's teeth.

The *Evans* Court determined that when, as here, the plea hearing transcript shows that the trial court was aware of the factual basis of the plea, USCR 33.9 "does not otherwise require the trial court to affirmatively state that it is satisfied there is a

factual basis. In such an instance, the acceptance of a plea would be deemed a factual finding that there is an adequate factual basis for the plea." 265 Ga. at 335(2).

We find no abuse of discretion and no manifest injustice in the trial court's determination that the factual basis for first degree burglary,[2] aggravated assault,[3] and false imprisonment[4] charges was a sufficient factual basis.[5] *Evans*, 265 Ga. at 335(2); *Bielen*, 265 Ga. App. at 867(1).

---

[2] OCGA § 16-7-1(b) ("A person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another[.]").

[3] OCGA § 16-5-21(a) ("A person commits the offense of aggravated assault when he or she assaults: (1) With intent to murder, to rape, or to rob; (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; (3) With any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in strangulation[.]" ); *Richards v. State*, 222 Ga. App. 853, 853-54(1)(a) (476 SE2d 598)(1996) (recognizing that hands or fists may be deadly weapons "depending upon their use, wounds inflicted, and other surrounding circumstances").

[4] OCGA § 16-5-41(a) ("A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority.").

[5] This is so notwithstanding appellate counsel's quotations from Kafka, which, while erudite, are both literarily and legally inapt in the present appeal.

(b) *Voluntariness*. Peoples summarily contends that the trial court's finding that his guilty plea was voluntary was in error. We disagree.

"When reviewing a trial court's determination that a defendant's plea was knowing and voluntary, we review the court's factual findings for clear error, but the ultimate determination is reviewed de novo." *Harris v. State*, 319 Ga. 133, 137(2) (902 SE2d 574) (2024). The State bears the burden of showing the plea was intelligently and voluntarily entered, and it may meet this burden by showing on the guilty plea hearing record "that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea, or by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary." *Loyd v. State*, 288 Ga. 481, 485(2)(b) (705 SE2d 616) (2011) (citation and punctuation omitted).

Here, the transcript of the plea hearing shows that, prior to entering his plea, Peoples testified that he was 50 years old, had attended college, and could read, write, and understand English. He testified that he had no mental illness, was not under the influence of drugs or medication, that he had not been forced or threatened to enter a guilty plea, and that he had reviewed the acknowledgment and waiver of rights form he signed with his attorney and that no part of the document was unclear or confusing

to him. He affirmed on the record of the hearing that everything in the document was true and correct, and he understood that by pleading guilty, he was waiving certain defined constitutional rights, including the right to continue his jury trial, to confront and cross examine witnesses against him, to testify or remain silent and to present evidence in his defense, as well as his right to be considered innocent until proven guilty. In the plea document he signed, he also waived these and other rights, and attested that his lawyer had advised him of the nature of the charges against him and all possible defenses, that he had been given enough time to talk with his lawyer and was satisfied with his lawyer's representation, and that he understood his right to appeal.[6]

The trial court, recounting these facts in its order, found that Peoples' plea was made freely, knowingly, intelligently, and voluntarily. It is clear from the record that the defendant understood the plea, the nature of the charges, and the constitutional rights that he was relinquishing, and that his plea was knowing and voluntary. See *Powell v. State*, 309 Ga. at 524-25(1). We find no error.

*Judgment affirmed. Barnes, P. J., and Markle, J., concur.*

---

[6] Peoples, who spoke prior to the trial court's acceptance of his plea, apologized to the victim and her family and stated that he "accept[ed] responsibility[.]"